# Illinois Official Reports

## Appellate Court

***PNC Bank, National Ass'n v. Zubel*, 2014 IL App (1st) 130976**

| | |
|---|---|
| Appellate Court Caption | PNC BANK, NATIONAL ASSOCIATION, Successor by merger to NATIONAL CITY BANK, Plaintiff-Appellee, v. MONIKA ZUBEL, Defendant-Appellant. |
| District & No. | First District Third Division<br>Docket No. 1-13-0976 |
| Filed | December 23, 2014 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-36988; the Hon. Anthony C. Kyriakopoulos, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Leading Legal, LLC, of Chicago (Stephen D. Richek, of counsel), for appellant.<br><br>Crowley & Lamb, PC, of Chicago (James M. Crowley and Jennifer E. Frick, of counsel), for appellee. |

Panel

PRESIDING JUSTICE PUCINSKI delivered the judgment of the court, with opinion.

Justices Hyman and Mason concurred in the judgment and opinion.

## OPINION

¶ 1        Defendant mortgagor Monika Zubel appeals an order of the circuit court granting plaintiff mortgagee PNC Bank's (PNC) motion for summary judgment in this mortgage foreclosure action brought in accordance with provisions of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1501 *et seq.* (West 2010)). Zubel also contests the propriety of the court's subsequent order approving the judicial sale of the mortgaged property and granting PNC an order of possession against her. She seeks reversal of the circuit court's orders, arguing that PNC's filings failed to comply with the requirements of the Foreclosure Law and that genuine issues of material fact exist that preclude summary judgment. For the reasons set forth herein, we affirm the judgment of the circuit court.

¶ 2                                              BACKGROUND

¶ 3        On October 2, 2009, PNC filed a complaint to foreclose mortgage against mortgagor Zubel regarding the mortgage and note executed with respect to property located at 6724 North Kenton Avenue in Lincolnwood, Illinois. In the complaint, PNC alleged that Zubel had not met any of her monthly mortgage payment obligations that year and was thus in default of her mortgage.

¶ 4        Zubel filed an answer in response to PNC's foreclosure action in which she admitted that she was the mortgagor of the property identified in PNC's complaint; however, she neither admitted nor denied that she had failed to fulfill her mortgage obligations and had defaulted on her mortgage.[1]

¶ 5        Thereafter, PNC filed a motion for summary judgment on its foreclosure action. In pertinent part, PNC argued that none of Zubel's filings created any genuine issue of material fact as to the default on her mortgage and that it was thus entitled to judgment as a matter of law. PNC's motion was supported by affidavits completed by two of its employees: Laura Cauper and Jason Cogar. In Cauper's affidavit, she averred that she was the authorized servicing agent with respect to Zubel's mortgage and was familiar with the business records that PNC had made in the regular course of its business with respect to Zubel's mortgage. Based on those documents, Cauper averred that PNC had not received all of the payments that it was due pursuant to the terms of Zubel's mortgage agreement.

¶ 6        Jason Cogar, in turn, submitted an "affidavit of amount due," in which he averred that "Monika Zubel failed to pay amounts due under the Note," and identified $511,744.04 as the total amount "due and owing" to PNC. He explained that the calculation was based on his "review of books and records with respect to Defendant's loan." He further explained that "[i]n the ordinary and regular course of its business, PNC Bank, National Association, utilizes the

---

[1] We note that Zubel also advanced an affirmative defense in her answer; however, she acknowledges on appeal that the defense lacked merit. Accordingly, we will not detail the nature of that defense in our disposition.

Lender Processing Service, Inc., to process and store its customer information and to calculate the amount due and owing on any note at any given time. PNC Bank, National Association, utilizes the Program in the ordinary and regular course of its business to track and maintain the amounts due and owing from the Borrower on the mortgage loan at issue in this case. Based on *** PNC Bank, National Association's business practices, recording such information is a regular practice of the PNC Bank, National Association's regularly conducted business activities for the purpose of referring to the information at a later date, and the entries in those records were made at the time of the events and conditions they describe, either by people with firsthand knowledge of those events and conditions or from practices [that] are standard in the mortgage servicing industry."

¶ 7    In addition to Cauper's and Cogar's affidavits, PNC submitted a copy of the demand letter that it sent to Zubel as well as business records reflecting payments that had been made and applied to the mortgage balance as well as the amounts due and owing.

¶ 8    Zubel, in turn, filed a written response. In that filing, she argued that PNC was not entitled to summary judgment because it "failed to submit an affidavit containing true and admissible evidence, which would warrant entry of summary judgment in [its] favor." Zubel's response was supported by her own affidavit, in which she averred: "from July 17, 2008 till [*sic*] January 27, 2009 I have made mortgage payments to PNC Bank to be credited to my mortgage balance." She further averred that she made payments of $2,860.71 "on or about 8/12/2008, *** 9/17/2008, *** 10/17/2008, *** [and] 11/18/2008." In addition, Zubel stated that she made a payment in the amount of "$4010.00 on or about 01/17/2009." Zubel further averred that each of these payments was made via a check that was mailed to, and subsequently cashed by, PNC. No accompanying records reflecting those payments were included with Zubel's affidavit.

¶ 9    On October 31, 2011, the circuit court entered a brief written order granting PNC's motion for summary judgment, finding that "no material issue of fact has been raised." The court also entered a judgment of foreclosure and sale. At the judicial sale that followed, PNC was the successful bidder and filed a motion in the circuit court for an "Order Approving Report of Sale and Distribution and for Possession" of the premises, which the circuit court granted. This appeal followed.

¶ 10                                   ANALYSIS

¶ 11    On appeal, Zubel disputes the propriety of the circuit court's order granting PNC's motion for summary judgment and its subsequent order granting PNC possession of the property following the judicially approved sale of the property. She first argues that PNC was not entitled to a judgment of any kind because its complaint failed to comply with the requirements set forth in section 15-1504 of the Foreclosure Law (735 ILCS 5/15-1504 (West 2010)).[2]

---

[2]Although Zubel's appellate brief sets forth the basic standards for summary judgment, it contains no citations to any substantive relevant legal authority to support her claims in contravention of the requirements of Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008). Although we do not condone a party's failure to abide by such requirements, we note that Rule 341 does not limit this court's jurisdiction, and we will thus nonetheless consider the arguments that Zubel raises on appeal in order to ensure a just result. See, *e.g.*, *Chicago Title Insurance Co. v. Aurora Loan Services, LLC*, 2013 IL App (1st) 123510, ¶ 25.

¶ 12    PNC, in turn, responds it satisfied the pleading requirements of the Foreclosure Law and maintains that the circuit court's orders were properly entered. Specifically, PNC argues that it "substantially complied with the suggested form complaint," set forth in subsection 15-1504(a) of the Foreclosure Law and maintains that the minor variances between the complaint it filed in the circuit court and the form complaint contained in the Foreclosure Law exist only because its complaint against Zubel was specifically tailored to the facts and circumstances pertaining to her mortgage and the default thereof.

¶ 13    Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). In reviewing a motion for summary judgment, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party to determine whether a genuine issue of material fact exists. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). A genuine issue of fact exists where the material relevant facts in the case are disputed or where reasonable persons could draw different inferences and conclusions from undisputed facts. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). To survive a motion for summary judgment, the nonmoving party need not prove her case at this preliminary stage of litigation; however, the nonmovant must present some evidentiary facts that would arguably entitle her to judgment. *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 8 (2004); *Garcia v. Nelson*, 326 Ill. App. 3d 33, 38 (2001). Although courts have deemed summary judgment a "drastic means of disposing of litigation" (*Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)), it is nonetheless an appropriate mechanism to employ to expeditiously dispose of a lawsuit when the moving party's right to a judgment in its favor is clear and free from doubt (*Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001)). Ultimately, a trial court's ruling on a motion for summary judgment is subject to *de novo* review and the judgment may be affirmed based on any basis found in the record. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009); *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 23.

¶ 14    In Illinois, foreclosure proceedings are governed by the Foreclosure Law (735 ILCS 5/15-1501 *et seq.* (West 2010)). Section 15-1504 of the Foreclosure Law sets forth the pleading and service requirements to initiate mortgage foreclosure actions. 735 ILCS 5/15-1504 (West 2010). Subsection (a) provides that a "foreclosure complaint *may be* in substantially the following form" and identifies various types of relevant information that may be included in the complaint, if appropriate, including: a copy of the mortgage and the mortgage note, "[i]nformation concerning [the] mortgage," such as the date of the mortgage, the names of the mortgagor and mortgagee, the amount of indebtedness, and a statement as to defaults, and also requests for relief. (Emphasis added.) 735 ILCS 5/15-1504(a) (West 2010). Although subsection (a) lists various types of information that may be included in a foreclosure complaint, subsection (b) explicitly provides that "*[a] foreclosure complaint need contain only such statements and requests called for by the form set forth in subsection (a) of Section 15-504 as may be appropriate for the relief sought*. Such complaint may be filed as a counterclaim, may be joined with other counts or may include in the same count additional matters or a request for any additional relief permitted by Article II of the Code of Civil Procedure." (Emphasis added.) 735 ILCS 5/15-1504(b) (West 2010).

¶ 15    Here, PNC's complaint contained all pertinent information concerning the mortgage at issue, including the date of the mortgage, the identification of the parties to the mortgage, a

legal description of the mortgaged premises, and statements as to Zubel's default. Moreover, PNC identified itself as the current legal holder of the mortgage and requested a judgment of foreclosure and sale of the property as well as any "further relief as the Court deems just." "[T]rue cop[ies]" of the mortgage and note at issue were attached to its complaint. Although Zubel correctly observes that PNC's complaint did not contain facts in support of a request for a shorter redemption period or facts in support of a request for the appointment of a receiver, which are additional suggested clauses set forth in subsection (a), PNC was seeking neither a shorter redemption period nor the appointment of a receiver, and was thus not required to include those facts.[3] As subsection (b) makes clear, to satisfy the pleadings required by the Foreclosure Law, a complaint "need contain only such statements and requests *** as may be appropriate for the relief sought." 735 ILCS 5/15-1504(b) (West 2010). Here, PNC's complaint was tailored to the specific facts and circumstances of Zubel's mortgage and default and the specific relief it sought, and accordingly, we find that it satisfied the pleading requirements of the Foreclosure Law. See, *e.g.*, *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶¶ 35-37 (recognizing that "[a] foreclosure complaint is deemed sufficient if it contains the statements and requests called for by the form set forth in section 15-1504(a)," and holding that a bank satisfied the pleading requirements where it pled that it was the mortgagee, asserted facts pertaining to the default of the mortgage and attached copies of the mortgage and note (internal quotation marks omitted)); *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 6 (2010) (finding that complaint complied with section 15-1504(a) where the plaintiff pled that it was the mortgagee and legal holder of indebtedness and attached a copy of the note and mortgage to the complaint).

¶ 16 Zubel next argues that based on the pleadings before the circuit court, genuine issues of material facts exist and, thus, the court erred in granting PNC's motion for summary judgment. Specifically, she observes that in her answer to PNC's complaint, she neither admitted nor denied certain allegations advanced by PNC, including her failure to meet her mortgage obligations, and argues that "based on the Complaint and Answer there [a]re material issue [*sic*] of fact." Zubel also argues that PNC was not entitled to summary judgment because the affidavits that it submitted in support of its motion did not comply with statutory requirements and should not have been considered. Similarly, she argues PNC failed to establish a proper foundation for the business records that it also submitted in support of its motion for summary judgment and that those records should not have been considered by the circuit court. Absent supporting material, Zubel argues that PNC failed to establish that it was entitled to summary judgment.

¶ 17 PNC responds that, based on pertinent filings, there is no genuine issue of material fact that Zubel defaulted on her mortgage obligations and that it was entitled to summary judgment. Specifically, PNC maintains that the affidavits and documentary evidence that it submitted in support of its motion for summary judgment met the requirements of Illinois Supreme Court rules and conclusively established that Zubel had not satisfied her mortgage payment obligations. Moreover, because Zubel failed to contradict the information contained in its

---

[3]We note that section 15-1504's references to facts in support of a shortened redemption period and facts in support of a request for appointment of a receiver are contained in subsections (a)(3)(O) and (a)(3)(R), respectively. 735 ILCS 5/15-1504(a)(3)(O), (a)(3)(R) (West 2010). Both provisions specify that such facts must be pled only if that specific relief is "sought."

filings with any competent evidence to the contrary, PNC argues that the circuit court properly entered summary judgment in its favor.

¶ 18        Pursuant to Illinois law, a mortgagee may foreclose its interest in real property upon "either the debt's maturity or a default of a condition in the instrument." *Heritage Pullman Bank v. American National Bank & Trust Co. of Chicago*, 164 Ill. App. 3d 680, 685 (1987). A mortgagee establishes a *prima facie* case for foreclosure with the introduction of the mortgage and note, after which the burden of proof shifts to the mortgagee to prove any applicable affirmative defense. *Farm Credit Bank of St. Louis v. Biethman*, 262 Ill. App. 3d 614, 622 (1994); *Rago v. Cosmopolitan National Bank*, 89 Ill. App. 2d 12, 19 (1967).

¶ 19        Here, PNC sought foreclosure of the mortgaged property based on Zubel's default on her mortgage obligations. To substantiate its claim of Zubel's default and its entitlement to judgment, PNC submitted copies of the mortgage and note at issue to the circuit court. PNC also submitted affidavits completed by several of its employees who provided specific details regarding Zubel's default on her mortgage. Although Zubel suggests that these affidavits did not comply with the requirements set forth in Supreme Court Rule 191 and should not have been considered, we disagree.

¶ 20        Affidavits submitted in connection with summary judgment proceedings are governed by Illinois Supreme Court Rule 191 (eff. July 1, 2008). *Avdic*, 2014 IL App (1st) 121759, ¶ 21; *U.S. Bank National Ass'n v. Sauer*, 392 Ill. App. 3d 942, 946-47 (2009). Rule 191(a), in pertinent part, provides:

> "Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. July 1, 2008).

¶ 21        Here, the affidavits completed by Laura Cauper and Jason Cogar provided details pertaining to Zubel's mortgage default. Both affiants indicated that they were familiar with the terms of Zubel's mortgage and the records PNC completed with respect to that mortgage. Cauper and Cogar both confirmed that Zubel had not complied with her mortgage obligations and Cogar identified $511,744.04 as the amount "due and owing" to PNC. The affidavits establish that the statements of Cauper and Cogar were based on their personal knowledge of PNC business procedures as well as their review of records relevant to Zubel's mortgage. Cogar's affidavit confirmed that those records were maintained in the ordinary course of PNC's business and satisfied the foundational requirements for the admission of those business records. See Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992) ("Any writing or record *** shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business ***."). The specific business records on which Cauper and Cogar relied in their affidavits were also submitted by PNC in support of its motion for summary judgment. Based on our review of the record, we conclude that the affidavits that PNC submitted in connection with its motion for summary judgment satisfied the requirements set forth in Rule 191(a) as the statements contained in the affidavits were based upon the personal knowledge of the affiants and the affidavits were accompanied by the documents on which the affiants relied

in making their statements. See, *e.g.*, *Avdic*, 2014 IL App (1st) 121759, ¶¶ 26-27 (affidavit submitted in foreclosure action satisfied the requirements of Rule 191 where it was based on the personal knowledge of the affiant, contained facts rather than conclusions, and was accompanied by the documents on which the affiant relied); *Sauer*, 392 Ill. App. 3d at 946-47 (affidavit submitted in mortgage foreclosure action was sufficient where it was based on the personal knowledge of the affiant).

¶ 22 Zubel's affidavit, in contrast, was not supported by relevant documentation. In her affidavit, Zubel stated that she made mortgage payments from July 17, 2008, until January 27, 2009, and identified the payment dates as follows: "August 12, 2008, September 17, 2008, October 17, 2008, November 18, 2008, and January 27, 2009." Zubel, however, did not offer any documentary proof that full and timely payments of her mortgage obligations were made. See Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013) ("Affidavits in support of and in opposition to a motion for summary judgment *** shall have attached thereto sworn or certified copies of all documents upon which the affiant relies ***."). Her affidavit is thus insufficient to create a genuine issue of material fact that is necessary to defeat PNC's motion for summary judgment. See *Bank of America, N.A. v. Land*, 2013 IL App (5th) 120283, ¶ 17 (" 'The mere suggestion that a genuine issue of material fact exists without supporting documentation does not create an issue of material fact precluding summary judgment.' " (quoting *In re Marriage of Palacios*, 275 Ill. App. 3d 561, 568 (1995))). Moreover, based on the purported payments that Zubel lists in her affidavit, she made no mortgage payment in December 2008, and thus there is no genuine issue of material fact that she defaulted on her mortgage obligations. We similarly find that the responses contained in Zubel's answer to PNC's foreclosure complaint are also insufficient to preclude the entry of summary judgment. In her answer, Zubel claimed to have no knowledge as to whether she failed to make certain payments and defaulted on her mortgage obligations; however, it is well established that "[i]n order to prevent the entry of a summary judgment, the nonmoving party must present a *bona fide* factual defense and not hide behind equivocations and general denials." *Koukoulomatis v. Disco Wheels, Inc.*, 127 Ill. App. 3d 95, 101 (1984).

¶ 23 Ultimately, based on PNC's filings, which were supported by both affidavits and documentary evidence, we find that PNC presented sufficient evidence to establish a *prima facie* case that Zubel defaulted on her mortgage obligations and that foreclosure was warranted. We further find that Zubel's filings did not give rise to any genuine issues of material fact regarding her default and therefore conclude that the circuit court properly granted PNC's motion for summary judgment. See *Avdic*, 2014 IL App (1st) 121759, ¶ 32 (upholding a circuit court order awarding summary judgment to a bank in foreclosure action where the bank's filings contained sufficient evidence to establish its case that the mortgagor had defaulted on his mortgage obligations and the mortgagor failed to file any competent evidence to rebut the bank's claims).

¶ 24 We further find that the additional orders entered by the circuit court after granting PNC's motion for summary judgment, including the judgment of foreclosure and sale of the property and an order of possession, were also proper. Section 15-1508(b) of the Foreclosure Law provides that a circuit court "shall" enter a judicial order approving the judicial sale of foreclosed property unless it finds that: (i) proper notice of the sale was not provided; (ii) "the terms of sale were unconscionable"; "the sale was conducted fraudulently"; or "justice was otherwise not done." 735 ILCS 5/15-1508(b) (West 2010). Here, Zubel does not dispute the

propriety of the sale and our review of the record confirms there are no grounds that exist that require reversal of the court's order. Despite failing to challenge the order approving the judicial sale, Zubel argues that the court erred in granting PNC's request for an order of possession against her once PNC purchased the property at the sale. Her argument is unavailing. Section 15-1701(d) of the Foreclosure Law provides that the purchaser "shall be entitled to possession of the mortgaged real estate, as of the date 30 days after the order confirming the sale is entered, against those parties to the foreclosure whose interests the court has ordered terminated, without further notice to any party, further order of the court, or resort to proceedings under any other statute other than this Article." 735 ILCS 5/15-1701(d) (West 2010). Although Zubel suggests that she was not properly named in a certain provision in PNC's complaint, there is no dispute that Zubel was identified by PNC as the mortgagor and party liable on the note and that the court terminated her interests when it entered the judgment of foreclosure and sale on the mortgaged property. PNC's complaint contained a request for possession, and it was statutorily entitled to possession of the premises once the judicial sale, in which it was the prevailing bidder, was confirmed. 735 ILCS 5/15-1701(d) (West 2010). Accordingly, the circuit court did not err in entering an order of possession against Zubel.

¶ 25                                    CONCLUSION
¶ 26          The judgment of the circuit court is affirmed.

¶ 27          Affirmed.