2023 IL App (1st) 220267-U

No. 1-22-0267

Order filed March 3, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| U.S. BANK, N.A., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2015 CH 10251 |
| | ) | |
| ALVIN BURNETT AND NADINE BURNETT, | ) | Honorable |
| | ) | Lynn Weaver-Boyle and |
| Defendants-Appellants. | ) | Gerald V. Cleary, |
| | ) | Judges, presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Delort and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Summary judgment in favor of plaintiff was proper where defendants failed to raise a triable issue of fact regarding the authenticity of the mortgage and promissory note. The circuit court did not abuse its discretion in confirming the judicial sale of the property where defendants' objections showed no deficiencies in plaintiff's sale process.

¶ 2   Defendants Alvin and Nadine Burnett appeal from the circuit court's order granting summary judgment in favor of plaintiff U.S. Bank National Association and from the order confirming the judicial sale of the property in this foreclosure action. For the reasons explained below, we affirm.

¶ 3     On January 25, 2002, Alvin and Nadine Burnett granted a mortgage on their property at 825 Cherry Lane, Thornton, Illinois to New Century Mortgage Company in return for a $131,200.00 loan. Under the terms of the promissory note, the principal balance accrued interest at an initial rate of 8.75%. After two years, the interest rate adjusted every six months according to an index defined in the adjustable rate rider and addendum to the promissory note. The Burnetts owed payments on the first day of each month until they repaid the loan in full.

¶ 4     New Century Mortgage Company subsequently assigned the mortgage to U.S. Bank, which filed a complaint for foreclosure because the Burnetts had defaulted under the promissory note in November 2005. 735 ILCS 5/15-1504(a) (West 2014). U.S. Bank attached to its complaint the mortgage and promissory note bearing the Burnetts' notarized signatures. The Burnetts denied that the mortgage and note were true and correct copies of the agreement and claimed that Nadine Burnett's signatures had been forged. U.S. Bank moved for summary judgment (735 ILCS 5/2-1005 (West 2018)) and, in support of its motion, submitted an affidavit establishing the Burnetts' default under the loan (Ill. S. Ct. R. 113 (eff. July 1, 2018)). The circuit court granted summary judgment in favor of U.S. Bank, concluding that the Burnetts' affidavits submitted in response to U.S. Bank's motion failed to show a genuine issue of material fact. The circuit court then entered a judgment of foreclosure and sale. After selling the property for $81,840.00, U.S. Bank moved to confirm the sale and sought a deficiency judgment of $311,348.47 against the Burnetts. 735 ILCS 5/15-1508 (West 2020). Over the Burnetts' objections, the circuit court granted U.S. Bank's motion on February 10, 2022. This timely appeal followed. Ill. S. Ct. R. 303(a) (eff. July 1, 2017).

¶ 5     The Burnetts argue that the circuit court erred in granting summary judgment in U.S. Bank's favor because their answer and affidavits raise a triable issue of fact regarding the

authenticity of the mortgage. Summary judgment is appropriate where the pleadings, depositions, and affidavits on file, viewed in a light most favorable to the nonmoving party, reveal that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c). We review an order granting summary judgment *de novo*. *Citimortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶ 17.

¶ 6        Once a plaintiff establishes that it is the holder of a duly executed note and mortgage and that a default occurred, the burden shifts to the defendant to prove any affirmative defense to foreclosure. *PNC Bank, National Ass'n v. Zubel*, 2014 IL App (1st) 130976, ¶ 18. According to the Burnetts, they twice "refused to close" on the mortgage when they were presented with documents providing for an adjustable interest rate instead of the 30-year mortgage that they had negotiated with a fixed interest rate of 6.75%. They further alleged that five days later, on January 30, 2002, they executed a promissory note consistent with those terms. The Burnetts, however, submitted no competent evidence to support their denial and claim of forgery.

¶ 7        Under Illinois law, a party seeking to impeach a notarized instrument must present clear and convincing evidence from a *disinterested* witness, such as a handwriting expert. *E.g.*, *In re Estate of Bontkowski*, 337 Ill. App. 3d 72, 76-77 (2003); *Resolution Trust Corp. v. Hardisty*, 269 Ill. App. 3d 613, 616-17 (1995). As our supreme court has explained,

> "The reason for such strictness is that should the law allow the unsupported testimony of an interested witness *** to offset and destroy the deliberate act of certification under oath by one created by law to certify instruments of conveyance, it would shock the moral sense of the community, deny justice, and create chaos in land titles." *Koepke v. Schumacher*, 406 Ill. 93, 98 (1950).

Here, the Burnetts offered no evidence to oppose summary judgment except their own sworn statements, and they cannot stand on their denial alone to raise a genuine issue of material fact regarding the authenticity of U.S. Bank's mortgage documents. *Zubel*, 2014 IL App (1st) 130976, ¶ 13 ("[T]he nonmovant must present some evidentiary facts that would arguably entitle her to judgment."). In the absence of competent evidence, the circuit court did not err by entering judgment in favor of U.S. Bank.

¶ 8    The Burnetts point to a subsequently executed promissory note, an incomplete and unrecorded mortgage, and a handwritten notarized letter expressing their intent to procure a fixed-rate mortgage as raising a question as to the validity of U.S. Bank's mortgage. They argue that the circumstances are analogous to *Krilich v. Millikin Mortgage Co.*, 196 Ill. App. 3d 554, 557-58, 563 (1990), where alterations to the interest rate on a mortgagee's copy of an adjustable rate note raised a genuine dispute as to whether it was a holder in due course given the discrepancies in both the mortgagors' unaltered note and the recorded note rider.

¶ 9    Notwithstanding the Burnetts' failure to reference and attach the notarized letter and fixed-rate mortgage to their affidavits (see Ill. S. Ct. R. 191 (eff. Jan. 4, 2013)), nothing about the existence of those documents invites an inference that Nadine Burnett did not duly execute the documents attached to U.S. Bank's complaint five days earlier. A notarized instrument is presumptively valid and not impeachable *except* in instances of fraud or imposition. *Hardisty*, 269 Ill. App. 3d at 616-17. Where, for instance, a mortgagor encumbers property by using a forged quitclaim deed, the mortgage is void and unenforceable from its inception. *E.g.*, *Bontkowski*, 337 Ill. App. 3d at 75-77. Where instead a mortgage is voidable and not subsequently ratified, its enforceability turns on whether the note's holder knew or had reason to know of the underlying

fraudulent circumstances. *E.g.*, *Bontkowski*, 337 Ill. App. 3d at 79; *LaSalle Bank v. Ferone*, 384 Ill. App. 3d 239, 244 (2002). Similarly, in *Krilich*, the mortgagors submitted an affidavit from a former employee of the mortgagee who explained the circumstances underlying the allegedly fraudulent alterations to the interest rate on the mortgagee's copy of the promissory note. *Krilich*, 196 Ill. App. 3d at 558-59; see also 810 ILCS 5/3-407 (West 2004) (fraudulent alterations to a negotiable instrument discharge the payor unless the payee is a holder in due course).

¶ 10    The Burnetts, in contrast, have not proffered any comparable evidence suggesting fraud in Nadine Burnett's execution of the January 25 promissory note, which also bears no signs of having been altered, or impeaching the recorded mortgage and rider attached to U.S. Bank's complaint. The Burnetts failed to raise a triable issue of fact regarding the authenticity of the promissory note and the enforceability of the mortgage, and thus we affirm the circuit court's order granting summary judgment in U.S. Bank's favor.

¶ 11    The Burnetts next argue that we should reverse and remand the cause for limited discovery and an evidentiary hearing because the circuit court failed to fully consider whether the price for which U.S. Bank sold the property is unconscionable. 735 ILCS 5/15-1508(b)(ii) (West 2020). We review an order confirming a judicial sale following a foreclosure judgment for an abuse of discretion. *CitiMortgage, Inc. v. Bermudez*, 2014 IL App (1st) 122824, ¶ 57.

¶ 12    Here, the Burnetts failed to supply a report of proceedings from the confirmation hearing. The appellant bears the burden of ensuring that the reviewing court receives a sufficiently complete record to permit our review of the claimed errors. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005). Any doubts that arise from the incomplete record are resolved against the appellant, and we will presume that the circuit court's order had a sufficient basis in fact and law. *Id.* at 157.

Absent a record of how the circuit court considered the Burnetts' objections to the sale, we cannot conclude that the circuit court acted unreasonably or arbitrarily by confirming the sale. See, *e.g.*, *Bermudez*, 2014 IL App (1st) 122824, ¶ 69.

¶ 13 Judicial sales, moreover, rarely result in competitive bids equivalent to a property's fair market value:

> "It is well recognized that it is unusual for land to bring its full, fair market value at a forced sale. Inadequacy of sale price is not a sufficient reason, standing alone, to deny confirmation of a judicial sale. *** When there is no fraud or other irregularity in the foreclosure proceeding, however, the price at which the property is sold is the conclusive measure of its value." *NAB Bank v. LaSalle Bank, N.A.*, 2013 IL App (1st) 121147, ¶ 20.

Here, the Burnetts submitted unofficial valuations found on Zillow and Redfin in support of their objections, whereas U.S. Bank offered a broker's price estimate based on an inspection conducted by a licensed appraiser. According to the Burnetts, the sale price is 40% of the property's estimated value. U.S. Bank counters that the sale price amounted to 62% of the broker's price opinion. The Burnetts, however, raised no circumstances concerning U.S. Bank's sale process to suggest that it was somehow deficient in procuring higher bids. The defendants in *Resolution Trust v. Holzman*, 248 Ill. App. 3d 105, 115 (1998), in contrast, offered more than a separate appraisal—they alleged the existence of bids "at prices which would have fully satisfied the mortgage obligation upon the sale of only four of eight units."

¶ 14 The Burnetts further argue that U.S. Bank, prior to the circuit court's confirmation of the sale, took steps toward ownership of the property by changing the locks and transferring the

utilities. From these actions, the Burnetts contend that justice was otherwise not done by the sale of the property. 735 ILCS 5/15-1508(b)(iv) (West 2020). "The 'justice clause' provides a narrow window through which courts can undo sales because of serious defects in the sale process ***." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 25. Here, again, the Burnetts' objections do not concern the process by which U.S. Bank procured bids. Even if U.S. Bank's actions were premature, they do not justify setting aside the sale. Accordingly, we decline to reverse and remand the cause for discovery and an evidentiary hearing on the Burnetts' objections.

¶ 15     For these reasons, we affirm the circuit court's judgment.

¶ 16     Affirmed.